IN THE DISTRICT COURT OF THE UNITED STATES
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

**UNITED STATES OF AMERICA** )  CR 2:07-578
)
vs. )
)
**ALBERT E. PARISH, JR.** )

### GOVERNMENT'S MEMORANDUM IN SUPPORT OF DETENTION

NOW COMES THE UNITED STATES OF AMERICA, by and through Reginald I. Lloyd, United States Attorney and Carlton R. Bourne, Jr., Assistant United States Attorney for the District of South Carolina, and files this Memorandum In Support of the Defendant's Continued Detention, and in support, states as follows:

### FACTS

On April 12, 2007, the defendant was arrested on a Criminal Complaint that charged him with making a false statement and providing false documents to officials with the Securities and Exchange Commission, a violation of Title 18, United States Code, Section 1001.[1] An arrest warrant was issued for the defendant. His attorney accompanied him the to the Charleston Office of the Federal Bureau of Investigation where he self-surrendered. During his intake interview, the defendant said he had

---

[1] Prior to this, on April 5, 2007, the Securities and Exchange Commission sought and received emergency injunctive relief against the defendant based on violations of the Anti-Fraud Provisions of the federal securities laws. As part of the relief, the District Court ordered that the defendant's assets be frozen, and that a Receiver be appointed to investigate, protect and gather assets. On April 12, 2007, the Receiver issued a report to the Court outlining his findings and action; another report is expected to be filed on May 30, 2007.

amnesia, claiming that he had no independent recollection of his name or the identity of his family members. At the defendant's initial appearance before the Honorable Robert S. Carr, the government requested that the defendant be detained. A detention hearing was conducted and the Judge ordered that the defendant be detained as a flight risk, primarily due to the questionable mental status of the defendant and the large amount of loss attributed to the defendant.

On May 9, 2007, a federal grand jury returned an Indictment against the defendant, charging him with 6 counts of mail fraud, in violation of Title 18, United States Code, Section 1341, 4 counts of wire fraud, in violation of Title 18, United States Code, Section 1343, and 1 count of making false statements, a violation of Title 18, United States Code, Section 1001. Each count of mail fraud and wire fraud carries a penalty up to 20 years in prison and a $250,000 fine. The false statement charge carries a penalty up to 5 years. At arraignment, the defendant requested that the issue of bond be re-visited. The Court directed the parties to file pleadings prior to the hearing.

## MEMORANDUM OF LAW

Title 18, United States Code, Section 3142 addresses the issue of pre-trial release and detention. Detention is appropriate in cases where "no condition or combination of conditions will reasonably assure the appearance" of the defendant. 18 U.S.C., § 3142(e). In the instant case, the government sought detention based on the "serious risk that such person will flee." 18 U.S.C. § 3142 (f). Such a finding must be supported by a preponderance of the evidence. *United States v. Stewart,* 19 Fed. Appx. 46 (4th Cir.

2001); *United States v. Hazime*, 762 F. 2d 34, 37 (6th Cir. 1985); *United States v. Medina*, 775 F. 2d 1398, 1402 (11th Cir. 1985). In determining whether there are conditions that will reasonably assure a defendant's appearance, Congress set forth several factors the Court should consider in making its decision. Among those factors were: (1) the nature and circumstances of the crime....; (2) the weight of evidence against the person; and (3) the history and characteristics of the person including the defendant's character, physical and mental condition, family ties, employment, financial resources, community ties, past conduct, and history relating to drug and alcohol abuse. 18 U.S.C. §3142(g).

At the detention hearing, after examining these factors, the Magistrate Judge found that no combination of conditions could be imposed that would reasonably assure the defendant's appearance. The Judge indicated that the amount of loss, as well as the defendant's questionable mental status, contributed to his finding that the defendant was a flight risk. Additionally, the Court found that given the number of victims involved and the amount of loss, the defendant's ties to the community were "strained, to say the least".

The defendant has filed a motion for the Court to re-visit the issue of bond, arguing that the amount of loss is "significantly less" and that no evidence has been uncovered that assets have been secreted. The government submits that a review of the factors set forth under the Bail Reform Act originally supported a finding that detention was appropriate, and they still support such a finding.

With regard to the nature and circumstances of the crime, the defendant has been charged with a complex and far-reaching fraud scheme that has existed since at least

2002.  It is believed that his scheme has taken in more than $112 million from investors, with $57 million being paid out to investors to continue the fraud.  The defendant has disposed of approximately $55 million of the investors' funds entrusted to him.  Some of these funds were spent by the defendant on construction of his new residence, purchases of vacation and rental property, purchases of luxury automobiles including a customized Mercedes van, Jaguar automobiles, Lexus automobiles, the chartering of private jets, and purchases of art and jewelry.

With regard to the second factor to be considered, the weight of the evidence against the defendant is substantial.  There are approximately 600 people who invested with the defendant, many of whom have lost most of their holdings through the defendant's fraudulent scheme.  Parish attempted to keep the scheme alive by paying "early" investors with funds provided by new investors - a classic *Ponzi* scheme; additionally, Parish manufactured fake brokerage account statements indicating tremendous holdings with brokerage firms, when in fact, no significant holdings existed.  He distributed these fake account statements to investors, as well as to officials with the Securities and Exchange Commission, in an effort to conceal and continue the scheme.

Regarding the personal characteristics of the defendant, there is no dispute that the defendant has no prior criminal record and there is no evidence of drug or alcohol abuse.  However, with regard to other factors, the defendant is no longer employed - largely due to the fact that his employer was among those defrauded.  Additionally, while the defendant cites his family ties, several family members were also among those who

invested with Parish and were victimized. As for community ties, given the 600 victims, many of whom are local, the Court was correct in stating that Parish's ties to the community were "strained." While the defendant has been determined to be competent to stand trial, his mental status remains questionable. Parish still complains of suffering from bouts of amnesia, although he claims that his memory has recently improved.

As for his financial resources, a large portion of assets have been seized by the Receiver; however, it is believed the defendant netted over $50 million from this scheme and no large "pools" of money have been discovered.[2] While the Receiver has conducted a substantial and thorough investigation of assets, he has had only seven weeks to conduct an investigation of a fraudulent scheme that has existed for at least five years. It can hardly be said that the $55 million in question has been totally accounted for.

In his memorandum arguing for release on bond, the defendant relies heavily on *United States v. Giordano*, 370 F. Supp. 2d 1256 (S.D. Fla., 2005), an opinion from a district court in the Southern District of Florida. However, in a fraud case arising in this Circuit, the Fourth Circuit upheld a district court's finding that the risk of flight had been established by a preponderance of the evidence and affirmed the order of pre-trial detention. In *United States v. Stewart,* 19 Fed. Appx. 46 (4th Cir. 2001), the defendant was charged with multiple counts of mail fraud and wire fraud and money laundering in a *Ponzi* scheme. The amount of loss was $56 million. The Court stated, that given the

---

[2] While the defendant claimed that investors funds had grown to approximately $523 million, only $941,000 in liquid assets have been discovered.

amount of loss and the defendant's "extensive knowledge of ways to evade the Government," the district court's conclusion that the defendant posed a risk of flight was supported by a preponderance of evidence. *Stewart*, at 49.

Additionally, in a recent case, a district judge in the District of North Carolina, found that a risk of flight was proven in a fraud case where the amount of loss was $3 million and over 100 victims were defrauded. Because the defendant there had "the sophistication to understand the nuances of business incorporation ...which could assist him in re-establishing himself in another location," and because he faced a substantial sentence, the court found that no combination of conditions could reasonably assure the defendant's appearance. *United States v. DiBruno*, 2007 WL 152126 (W.D.N.C., Jan. 17, 2007). Comparably, in the instant case, Parish defrauded six times the number of victims and the amount of loss is alleged to be over $50 million. The defendant faces a substantial sentence which, given the other factors, creates a substantial risk of flight.

Respectfully Submitted,

REGINALD I. LLOYD
UNITED STATES ATTORNEY

S/*Carlton R. Bourne, Jr.*
Carlton R. Bourne, Jr.
Assistant United States Attorney
151 Meeting Street, Suite 200
Charleston, South Carolina 29401
(843)266-1654