IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| United States of America | ) | |
| | ) | No. 2:07-CR-00578-DCN |
| vs. | ) | |
| | ) | |
| Albert E. Parish, Jr., | ) | **SENTENCING MEMORANDUM** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

On October 5, 2007, Albert E. Parish, Jr. ("Parish" or "defendant") pleaded guilty, pursuant to a written plea agreement, to two counts of committing mail fraud in violation of 18 U.S.C. § 1341 and one count of making false statements in violation of 18 U.S.C. § 1001. At a hearing held June 26, 2008, the court sentenced defendant to a 292-month term of imprisonment, restitution of $66,820,167.08 (to be reduced after disbursements are made in the civil SEC-enforcement action), three years supervised release, and a special assessment of $300. That sentence was at the bottom of the advisory Guidelines range, but was substantially higher than the seventy-four month term of imprisonment that defendant argued was appropriate in this case.[1] In this memorandum, the court explains how it applied the factors found at 18 U.S.C. § 3553(a)

---

[1] Defendant's memorandum in aid of sentencing did not request a specific sentence, arguing instead that the court should consider the data presented therein and impose a sentence that "will give him some glimmer of hope" of outliving his term of imprisonment. Def. Mem. at 29. However, it is clear from the rest of the sentencing memorandum and counsel's argument at the sentencing hearing that defendant has argued a seventy-four month prison term is a reasonable sentence.

1

to reach the sentence imposed.[2]

## I.  APPLICABLE LAW

"A district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." Gall v. United States, 128 S. Ct. 586, 596 (2007). After calculating that range, the district court should then give the parties an opportunity to argue "for whatever sentence they deem appropriate." Id.  The district court must then consider all of the § 3553(a) factors, as applied to the particularized facts of the case before it, to determine which sentence best serves the factors.  Id.  In making its decision, the district court should "not presume that the Guidelines range is reasonable," id., although the court of appeals can (and the Fourth Circuit does) apply a presumption of reasonableness to within-Guidelines sentences, Rita v. United States, 127 S. Ct. 2456, 2462-63 (2007).

In United States v. Battle, 499 F.3d 315 (4th Cir. 2007), the Fourth Circuit explained how the factors § 3553(a) factors interact with the advisory Guidelines range:

> After calculating the sentence under the Guidelines, the district court must consider that sentence in light of the § 3553(a) factors.  If the § 3553(a) factors support a sentence within the Guidelines range, the district court should impose a sentence within the range that best serves the factors.  If the § 3553(a) factors do not support a sentence within the Guidelines range, the district court can impose a sentence outside the range that best serves the factors as long as it articulates why the factors support the sentence imposed.  A district court must therefore consider the § 3553(a) factors in every case, regardless of whether the sentence imposed is within the Guidelines range.

Id. at 323 (internal citations omitted).

---

[2]Defendant presented various objections to the revised pre-sentence report (PSR), which the court overruled at the sentencing hearing.  The court does not reconsider or otherwise address those issues here.

The district court also has an obligation to adequately explain how the factors applied in the case and affected the sentencing determination. If the sentence is within the Guidelines range, the district court need not offer a thorough explanation–a simple statement that it applied the factors will usually suffice so long as it is clear from the record that the court considered the relevant evidence and arguments. See id. at 324. Outside-Guidelines sentences will require much more thorough explanations of why the factors support the sentences. See id.; United States v. Green, 436 F.3d 449, 456 (4th Cir. 2006).

## II.   DISCUSSION

The court has already made the necessary factual findings and resolved the other legal disputes, and concluded that defendant's Guidelines range is 292 to 365 months. The government argued for a sentence at the high end of the range; defendant argued that a sentence of 74.4 months' imprisonment would avoid unwarranted sentencing disparities and best account for his health problems. Considering the § 3553(a) factors as applied to the particularized facts of this case, the court finds those factors support a sentence within the Guidelines range and therefore rejects defendant's request for a below-Guidelines sentence. The court also finds that the factors support a sentence at the bottom of the advisory Guidelines range because it is "sufficient[] but not greater than necessary" to accomplish the purposes of sentencing.

**(1)     Section 3553(a)(1):  The nature and circumstances of the offense and the history and characteristics  of the defendant support a within-Guidelines sentence.**

This was a serious offense. For more than a decade, defendant orchestrated a

fraudulent investment scheme in which he knowingly misappropriated funds from his friends, his family, his coworkers, the elderly, and those who relied on their investments to care for themselves or ill relatives. Defendant was, in the literal sense, a confidence man. He used his stature in the community, including his position as a professor at Charleston Southern University (CSU), his work with the Chamber of Commerce, favorable coverage in the local media, and his Christianity to build trust with existing and prospective investors. He also used investors' funds to inspire confidence by living an extravagant lifestyle, replete with private jet travel, luxury cars (including a purple Jaguar roadster with leopard-print convertible top), custom-made clothing, and expensive artwork for his personal use.

In his memorandum in aid of sentencing, defendant asserted he was a well-meaning investment "facilitator" who, through happenstance, found himself involved in something that he could no longer control. Although defendant might have begun his scheme with good intentions, he encouraged victims to invest large sums of money long after he knew his scheme would collapse. The Securities and Exchange Commission (SEC) investigation began in February 2007 and the SEC enforcement action began on April 5, 2007 (defendant was checked into a local hospital with reported amnesia on March 29, 2007). In January and February 2007, defendant took $300,000 from one of his co-workers at CSU, presumably knowing that his co-worker planned on using those funds for his imminent retirement. In February 2007, a grandmother opened nine accounts with defendant, one for each of her grandchildren. Defendant accepted her "investment." While defendant was the subject of the SEC's investigation, he took an

investment of $250,000 from a middle-age couple, an amount that represented a significant portion of their life savings. The week before his scheme collapsed, defendant stole $175,000 from a 75-year-old couple he had known his entire life. Those stories undercut defendant's contention that he never intended to harm his victims.[3]

In written statements submitted before the hearing and in oral statements made at the hearing, many of defendant's victims described—in tragic detail—their relationships with defendant and the effect his conduct had on their lives. Considering those statements in conjunction with defendant's conduct, the conclusion that this was a serious offense is inescapable.

Defendant's personal characteristics do not support a substantially lighter sentence. Unlike many criminal defendants, Parish is a well-educated college professor who, by all accounts, had a pleasant childhood and has a caring family. This was not a crime of necessity, and defendant's acts cannot be attributed to an underprivileged background. Defendant does have significant health problems, mostly relating to a chronic heart condition, which requires some consideration. The court finds those health issues do not require a below-Guidelines sentence because they are not so serious that the Bureau of Prisons will be unable to address his problems and imprisonment will not unnecessarily aggravate them.[4] As discussed *infra*, however, the court finds defendant's

---

[3] These accounts are found in the written victim impact statements made to the court before sentencing.

[4] In other words, defendant's "special circumstances," specifically his health issues, "are not special enough that, in light of § 3553(a), they require a sentence lower than the sentence the Guidelines provide." Rita, 127 S. Ct. at 2470.

health problems warrant a sentence at the low-end of the Guidelines range.

**(2)     Section 3553(a)(2)(A): A sentence within the Guidelines range will adequately and reasonably reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.**

As discussed above, the crimes to which defendant pleaded guilty are serious. Accordingly, a lengthy term of imprisonment (i.e., the applicable Guidelines range) is required to reflect the seriousness of his offenses. There is also no doubt that the lengthy Guidelines range will provide a just punishment because defendant will spend most, if not all, of the rest of his life in prison. He will lose any chance to rebuild his career, to regain his once well-regarded status in the community, and will be separated from his family for a very long time. However, the Guidelines range is not overly punitive in light of the seriousness of the offense and the effect his crimes had on dozens of his victims. Finally, the pairing of a substantial term of imprisonment with this serious offense will promote respect for the law.

**(3)     Section 3553(a)(2)(B):  A sentence within the Guidelines range will afford adequate deterrence to criminal conduct.**

Defendant has a low probability of recidivism.  <u>See</u> United States Sentencing Commission, <u>Recidivism and the "First Offender"</u> 26 (2004) (finding that only 6.8% of defendants on all crimes with no prior arrests recidivate within two years of receiving probation or release); United States Sentencing Commission, <u>Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines</u> 12 (2004) (finding that "recidivism rates decline relatively consistently as age increases" and that offenders over the age of fifty have a recidivism rate of only 9.5%). To the extent defendant is

likely to recidivate, a lengthy term of imprisonment will specifically prevent him from committing any further crimes.

Given that defendant is statistically unlikely to commit any further crimes, it could be argued that the Guidelines range is higher than necessary to deter future wrongdoing. However, the court must be concerned with not only deterring this specific defendant from further wrongs, but also with deterring others from committing similar crimes. See United States v. Politano, 552 F.3d 69, 74 (1st Cir. 2008); United States v. Martin, 455 F.3d 1227, 1240 (11th Cir. 2006); see also United States v. Munoz, 974 F.2d 493, 495 (4th Cir. 1992) ("The court may . . . impose a sentence to deter similar criminal conduct by others."). A Guideline' term of imprisonment in this case is required to deter others from orchestrating fraudulent investment schemes. A substantial term of imprisonment will send a clear message to others that such conduct entails serious consequences and will result in a lengthy term of imprisonment. Congress and the Sentencing Commission have expressed, in part through the Guidelines, that lengthy prison terms are necessary to deter white-collar crime–even if some might argue that lengthy sentences are unnecessary to accomplish that goal. See United States v. Thurston, 456 F.3d 211, 218 (1st Cir. 2006); Martin, 455 F.3d at 1240.

**(4)     Section 3553(a)(2)(C):  A sentence within the Guidelines range will protect the public from further crimes of the defendant.**

As discussed above, a long term of imprisonment will certainly protect the public from defendant's further crimes, to the extent he is prone to commit any more crimes. Although this factor may tend to support a lower sentence than the Guidelines range (i.e., a Guidelines sentence may be greater than necessary to protect the public), the other

factors' support for a lengthy prison term substantially outweighs this factor's mitigating effects.

**(5)    Section 3553(a)(2)(D): Provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

Section 3553(a)(2)(D) supports neither a long term of imprisonment nor a short term of imprisonment. Defendant holds a doctorate degree in mathematics, meaning that he needs no educational or vocational training. There is also no indication that he needs "other correctional treatment." But defendant will certainly need medical care while incarcerated. Defendant's healthcare argument implicitly assumes is that he will not receive sufficient care while in custody. The court has reviewed the medical records submitted by defendant, heard the testimony of his medical records expert, and received counsel's argument regarding his health. After conducting that review, the court finds that the Bureau of Prisons will be able to provide whatever treatment—physical, mental, or otherwise—that defendant requires.[5]

**(6)    Section 3553(a)(3) & (4): Among the kinds of sentences available, and considering the advisory Guidelines range, this case warrants a term of incarceration within the range.**

---

[5]While the taxpayers will suffer from having to pay for defendant's healthcare, the court does not believe that warrants a below-Guidelines sentence. As the Fourth Circuit recently explained, "It seems uncontroversial to note that . . . the concern over who pays for the defendant's incarceration can only go so far in supporting a variance." United States v. Abu Ali, 528 F.3d 210, 268 (4th Cir. 2008). At least one court of appeals has held that the sentencing court *cannot* consider the cost of imprisonment in applying the § 3553(a) factors. See United States v. Tapia-Romero, 523 F.3d 1125, 1127 (9th Cir. 2008) ("[Section] 3553(a) neither requires, nor allows, a court to consider the cost of imprisonment in determining the appropriate length of a defendant's term of imprisonment.").

8

There is no mandatory minimum in this case. Accordingly, the court may sentence defendant to probation up to the statutory maximum of thirty-five years, along with the usual options of restitution and supervised release. For the reasons stated elsewhere in this memorandum, the court believes that, among the available sentences, a within-Guidelines sentence is appropriate in this case.

**(7)   Section 3553(a)(5): The pertinent policy statements support a within-Guidelines term of incarceration.**

Congress's intentions with respect to white-collar sentencing are best expressed in the Sarbanes-Oxley Act of 2002, Pub. L. 107-204, 116 Stat. 745. The Act substantially increased penalties for white-collar crime, including mail fraud, and directed the Sentencing Commission to amend the Guidelines "to reflect the serious nature of the offenses and penalties" in the Act. Id. §§ 902-905, 116 Stat. 745, 805-06. With respect to mail fraud, Congress increased the maximum penalty from five years to twenty years, evincing Congress's intent that substantially higher sentences are warranted for fraudulent economic crimes. Id. § 903(a), 116 Stat. 745, 805.

**(8)   Section 3553(a)(6): A within-Guidelines sentence will not create unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.**

Defendant's primary argument for a below-Guidelines sentence is that the advisory range would result in extreme disparities among persons convicted of "similar" offenses. In support of his argument, defendant uses a data set obtained from the United States Sentencing Commission and, by filtering the data, allows defendant to argue that persons convicted of white-collar crimes involving losses in excess of $50 million receive an average sentence of 74.4 months incarceration (at least in cases not involving § 5K1.1

downward departures for substantial assistance).

By its plain language, § 3553(a)(6) is concerned only with avoiding disparities among similarly situated defendants; that is, among defendants with *similar records* and who have engaged in *similar conduct*. In United States v. Abu Ali, 528 F.3d 210 (4th Cir. 2008), the Fourth Circuit concluded the district court erred by comparing the defendant's conduct to a dissimilar cases, and distinguishing the defendant's conduct from similar cases, and using those faulty comparisons as a basis for its sentencing decision. Id. at 262-65. Thus, when applying § 3553(a)(6), the sentencing court must take care not to "compar[e] the incomparable" or to distinguish the indistinguishable. Id, at 264.

In the form presented, defendant's statistical evidence is not a reliable measure of the typical sentence for defendants with similar records who engage in similar conduct. First, defendant's data set includes cases from fiscal year 1999 through fiscal year 2006. In 2002, Congress amended the relevant statutes to provide increased penalties for white-collar crimes and directed the Sentencing Commission to increase penalties under the Guidelines for obstruction of justice. See Sarbanes-Oxley Act of 2002, Pub. L. 107-204 §§ 805, 902-06, 116 Stat. 745.[6] Following Congress's directive, the Sentencing Commission amended several provisions relating to white-collar crimes to provide increased penalties for white collar crimes in early 2003. Defendant's data thus includes three years of cases that did not involve the increased penalties under Sarbanes-Oxley and the subsequent Guidelines amendments. And, just as importantly, cases from 1999

---

[6]Before Sarbanes-Oxley, five years was the maximum penalty for a single conviction of committing mail fraud in violation 18 U.S.C. § 1341. Congress increased the maximum penalty to twenty years, a four-fold increase.

through 2002 do not reflect society's increased concern (as reflected in Sarbanes-Oxley) with white-collar crime following the collapse of Enron and other white-collar scandals.

Defendant has not otherwise shown that his statistical analysis involves comparable cases, or that it excludes distinguishable cases. Defendant includes offenses calculated under USSG §§ 2B1.1 and 2F1.1, involve losses in excess of $50 million, and does not include § 5K1.1 departures. But the ability to compare cases stops there. It is impossible to tell whether defendant's statistics included (or improperly excluded) cases with the number of victims involved here. Moreover, it is not clear the extent to which the data includes defendants who acted as investment advisors. Finally, there is no indication that the statistics include or exclude defendants who received enhancements for obstruction of justice.

Having discredited defendant's statistical evidence, the court has received the parties submissions and conducted its own research to find comparative cases. For every case defendant cited as requiring a low sentence, the government has countered with an equally persuasive case arguing for a high sentence. The court has encountered similar results in its own review of other cases.[7] Because of the existing disparities, and the difficulty in comparing this unique case to other cases, the court finds that § 3553(a)(6) requires neither an above- or below-Guidelines sentence. At bottom, the factor is not as helpful as the other factors—which support a within-Guidelines sentence—to find the appropriate sentence. See Gall, 128 S. Ct. at 602 (holding that reasonableness turns on

---

[7]Copies of the court's research were made available to defendant and the Government prior to sentencing.

11

whether "the § 3553(a) factors, *on the whole*, justif[y] the sentence" (emphasis added)). Accordingly, after reviewing the parties' anecdotal evidence and conducting its own research, the court is confident that a within-Guidelines sentence will not create unwarranted disparities.

**(9)     Section § 3553(a)(7):  Defendant must provide restitution to the victims of his offense.**

This was an economic crime, and his victims suffered substantial economic harm. Accordingly, the court has found that restitution in the amount of  $66,820,167.08 (to be reduced after disbursements are made in the civil SEC-enforcement action) is warranted. Of course, unless defendant wins the Powerball lottery, it will be impossible for him to make restitution in this amount.

**(10)    Because of defendant's health problems, any sentence above the low-end of the Guidelines range would be "greater than necessary" to accomplish the purposes of sentencing.**

As discussed at the sentencing hearing and in defendant's memorandum, defendant suffers from serious health problems, particularly chronic coronary disease.  All parties seem to agree that defendant has a less than normal life expectancy, and that defendant may not outlive a sentence at even the bottom of the Guidelines range.  While the § 3553(a) factors support the lengthy term of imprisonment recommended by the Guidelines, defendant's personal health problems and life expectancy mean that any sentence above the low-end of the Guidelines would be "greater than necessary" to serve the purposes of § 3553(a)(2).  See United States v. Shortt, 485 F.3d 243, 248 (4th Cir. 2007) ("[A] sentence that is greater than necessary to serve [the purposes of § 3553(a)(2)] is unreasonable.").  Accordingly, and having considered the remainder of the § 3553(a)

factors, the court finds the factors support a sentence at the bottom of the advisory Guidelines range.

### III.  CONCLUSION

For the foregoing reasons, the court finds the factors located at § 3553(a) support a sentence of 292 months' imprisonment, restitution of $66,820,167.08 (to be reduced after disbursements are made in the civil SEC-enforcement action), three years supervised release, and a special assessment of $300.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**CHIEF UNITED STATES DISTRICT JUDGE**

**July 9, 2008**
**Charleston, South Carolina**

13