UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
- Charleston Division -

RECEIVED CLERK'S OFFICE
2017 DEC -8 A 9:0

| | | |
|---|---|---|
| Albert E. Parish, | § | |
| Petitioner, | § | Case No.: |
| | § | 2:07-CR-00578-001-DCN |
| v. | § | |
| | § | Case No.: |
| United States of America, | § | 04-16-90085 |
| Respondent. | § | |

MOTION FOR RELIEF UNDER
28 U.S.C. §§455(a), (b)(4), AND
RULE OF CIVIL PROCEDURE 60(b)(6)

A.  Relief Sought and Requested

Petitioner, Albert E. Parish, appearing Pro Se, respectfully moves this court to vacate Petitioner's sentence and remand back for resentencing in front of a different judge.

B.  Background

On May 9, 2007, a federal grand jury returned an indictment against Defendant Albert E. Parish charging him with mail fraud, wire fraud, and false statements. On October 5, 2007, the Defendant pled guilty to two counts of mail fraud, in violation of Title 18 U.S.C. §1341, and one count of False Statements, in violation of U.S.C. §1001. Defendant was subsequently sentenced to 292 months total imprisonment, three years of supervised release, and ordered to pay restitution. Defendant's attorney filed a brief in accordance with Anders v. California, 386 U.S. 758, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), challenging the District Court's finding relative to the amount of loss and claiming abuse of

[ 1 ]

discretion in the imposition of a within-guidelines sentence, but concluding that there are no meritorious issues for appeal. Petitioner filed a supplemental pro se brief, in which he asserts error in the District Court's rejection of his claim and supporting evidence that his sentence was disparate in contravention of 18 U.S.C. §§3553(a), (b), and contends his attorney was ineffective. Petitioner's conviction and sentence were affirmed. Petitioner filed a Judicial Complaint with the Fourth Circuit Court of Appeals on August 25, 2016, asserting for the first time that the actions on part of Judge Norton tainted the proceedings through judicial misconduct, (i.e. (1) Judge Norton personally attending the auction that he himself ordered and purchased various items at said auction, then continuing to preside over Petitioner's criminal case; (2) Judge Norton had at least a third-degree relationship with Petitioner's attorney (in that they were God-fathers to each others' children).     In response to Petitioner's Judicial Complaint, the Fourth Circuit Chief Judge, Roger L. Gregory, in a Memorandum and Order ("M&O"), ordered the complaint be dismissed in part based upon corrective action and dismissed in part because the facts fail to support a claim of misconduct. Petitioner filed a Petition for Review on March 13, 2017. The Fourth Circuit ordered on March 20, 2017, that the Petitioner for Review in Case No. 04-16-90085 be denied. This instant motion for relief follows.

C.   Argument and Facts in Support of 28 U.S.C. §455(a)

Petitioner asserts for the first time that recusal of Judge Norton from presiding over Petitioner's sentencing hearing is mandated by the post-sentence finding of an "appearance of impropriety." No allegation is made that the trial

[ 2 ]

judge has a personal bias or prejudice either against the Petitioner or in favor of any adverse party. As the argument is only that an appearance of impropriety exists, the applicable statute is 28 U.S.C. §455. The statute provides, in relevant part:

> Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>                                                [§455(a)]

The purpose of the statute is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible. Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 860, 100 L.Ed. 2d 855, 108 S.Ct. 2194 (1988).

Several years into his 292 month sentence, during the summer of 2016, Petitioner received copies of postings from "bloggers" on the Post-Courier website (largest newspaper in the Charleston Metro Area), stating that Judge Norton purchased a tray of cufflinks at the auction conducted by the receiver in the civil enforcement action that was presided over by Judge Norton. The civil enforcement action was filed by the Securities and Exchange Commission ("SEC") against Petitioner. Judge Norton also presided over Petitioner's criminal action that was directly related to the civil enforcement action in the same year (2007).

These copies of the blog postings Petitioner received were the "first" time Petitioner had any proof of Judge Norton's extrajudicial activities (see copies, **Exhibit "A"**). Petitioner immediately filed the aforementioned Judicial Complaint under 28 U.S.C. §351 to the Fourth Circuit Court of Appeals on August 25, 2016.

[ 3 ]

Petitioner presents the M&O filed on February 2, 2017 as an instrument of proof and a verified deposition as to an affirmation of facts supporting recusal under 28 U.S.C. §455(a).

The Supreme Court has held that subsection(a) of §455 covers both "interest or relationship" and "bias or prejudice" grounds. Quite simply and quite universally, recusal was required whenever "impartiality might reasonably be questioned." See Liteky v. United States, 510 U.S. 540, 548 S.Ct. (1994).

Here, the M&O determined that an appearance of impropriety existed. "I find that the judge's purchase did create an appearance of impropriety" (See M&O p.7. **Exhibit** "B"). Despite the M&O labeling the judges actions as "inadvertent", that is not a basis for refusing to grant a disqualification of this motion under §455(a) in light of Liteky.

In response to the M&O, Petitioner, in his Memorandum in Support for Review, pursuant to 28 U.S.C. §352(c) filed on March 13, 2017 (See **Exhibit** "C"), refutes the M&O's findings that the judge's actions were "inadvertent". While it was ethically permissible for the judge to attend the auction, the line was crossed when the judge actually purchased the cufflinks. This was not an "inadvertent" action by the judge. "Inadvertent" is defined as 'unintentional, accidental.' (See Webster's II New College Dictionary, 1995 Edition). The judge's actions were anything but "inadvertent;" the Judge set the date of the auction and knew the quality of assets that were to be auctioned off. Indeed, as Petitioner stated

[ 4 ]

in Part 4 of his Memorandum of "facts for the case" in support of the Judicial Complaint filed on August 25, 2016, "Further, assets that were connected to my fraud included high end art, jewelry, coins, watches, and similar assets...". Judge Norton readily admitted to the purchase when confronted with these allegations for the first time when inquiry was made. (See p.2. Exhibit "B"). As Petitioner pointed out in pages 2-3 of Exhibit "C", the commentary section of Canon 2 states: A judge must avoid all impropriety and appearances of impropriety. Certainly, the M&O did find the "appearance of impropriety in contravention of the standards established by Canon 2" (See p.7. Exhibit "B"). With this finding, the M&O is accepting all of what Canon 2 defines as "impropriety," which includes: impaired impartiality, erosion of public confidence in the judiciary, improper conduct by judges, etc. (See Exhibit "C", p.2-3, quoting commentary section of Canon 2 of the code of conduct). Exhibit "A" supports a claim that at least the erosion of public confidence of the judiciary was at play. Indeed, this was a concern of Petitioner's as stated "the judge, in order to maintain the public's confidence in the judiciary, had to deny the Petitioner's request for a downward departure; due to the overwhelming media coverage." Page 4 of Exhibit "B" articulates Petitioner's concerns with respect to the judge's participation in the auction:

> ...As you can see, the public did take note of his attendance and did seem to collectively wonder if I would receive a light sentence. One can only wonder if I would receive [an] unusually heavy sentence to counter this impression in the public."

The facts that support recusal under §455(a) are indisputable; Chief Judge, Roger L. Gregory, did make a finding of "an appearance of impropriety" (see p.7. Exhibit "B"), which by definition of the Code of Conduct for Judges includes,

[ 5 ]

but is not limited to, impaired impartiality, (see p.3 **Exhibit "C"**, quoting Canon 2's code of conduct).

> The very purpose of §455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible."
> (Liljeberg, at 865)

Petitioner now requests this motion be granted in his favor under Rule 60(b)(6) in conjunction with §455.

> Although §455 does not speak to vacating a judgment, Rule 60(b)(6), in conjunction with §455, does provide 'a procedure whereby, in appropriate cases, a party may be relieved of a final judgment.' Travelers Insurance Co. v. Liljeberg Enters, 38 F.3d 1404, 1408 (5th Cir. 1994) (quoting Liljeberg v. Health Svcs. Acquisition Corp, 486 US 847, 863 (1988)

D. <u>Argument and Facts In Support of 28 U.S.C. §455(b)(4)</u>

Petitioner asserts for the first time that recusal of Judge Norton is mandated by the post-sentence findings of the Fourth Circuit Court of Appeals that is the equivalent to a violation of §455(b)(4). The statute reads in relevant part:

> He shall also disqualify himself in the following circumstances: ... (4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a **financial interest** in the subject matter in controversy or in a party to the proceeding, **or any other interest that could be substantially affected by the outcome of the proceeding.** (emphasis added).

Petitioner, as in part C of this motion, presents **Exhibit "B"** as an instrument of proof as to the uncontested affirmation of facts supporting Judge Norton's recusal under §455(b)(4). As **Exhibit "B"** correctly noted, Judge Norton's purchase did create the appearance of impropriety.

[ 6 ]

Indeed, inquiry was made of the judge regarding the judge's participation in the auction. Judge Norton readily admits that he did attend and that he did purchase cufflinks (p.2-3, **Exhibit "B"**). A violation of §455(b)(4) requires knowledge; moreover, advancement of the purpose of the provision (b)(4) does not depend upon whether or not the judge actually knew of the facts, so long as the public might reasonably believe that he or she knew. Liljeberg at 859-60.

When Petitioner initially made his Judicial complaint on August 25, 2016, he attached two "blog" comments by objective observers that questioned Judge Norton's impartiality (FN 2, **Exhibit "B"**). Judge Norton's failure to disqualify himself post-auction, despite his assertions that he was "unaware of how [this provision] could be interpreted" nonetheless was in plain violation of the terms of the statute. Liljeberg at 861 (see also Judge's Response, p.3. **Exhibit "B"**). Furthermore, it seems incredulous that upon further inquiry into the judges extrajudicial conduct at the auction, the judge states that he was "not aware of any public coverage of my participation in the auction" (p.5 **Exhibit "B"**). Petitioner noted in Part (6) of his memorandum of "facts for the case" in his judicial complaint of August 25, 2016:

> The Post-Courier newspaper ran over 200 stories concerning my case in just over one year. Local television covered my case almost every evening for months.

In addition, **Exhibit "A"** supports Petitioner's assertion that throughout the greater and surrounding areas of Charleston, SC, public knowledge of the auction and Judge Norton's participation in the auction was well-known.

[ 7 ]

Judge Norton's purchase of cufflinks qualifies as a "financial interest" and "any other interest that could be substantially affected by the outcome of the proceeding." §455(b)(4). Indeed, Judge Norton's "interest in maintaining public confidence in the judiciary" would have been seriously eroded had he granted Petitioner's request for a downward departure at his sentencing hearing. It is quite inexcusable that Judge Norton failed to recuse himself from presiding over Petitioner's Sentencing Hearing. A full disclosure at that time would have completely removed any basis for questioning the Judge's impartiality and would have made it possible for a different judge to sentence Petitioner. Liljeberg, at 866.

As the Court of Appeals correctly noted in **Exhibit "B"**,. the judge's purchase "did create an appearance of impropriety" in violation of the standards established by Canon 2; Judge Norton's purchase and nondisclosure also constitutes a violation of §455(b)(4). This separate violation of §455 further compels the conclusion that vacateur is an appropriate remedy. By his silence, Judge Norton deprived Petitioner of a basis for making a timely motion and further deprived Petitioner of an issue on direct appeal. Liljeberg, 867.

These facts create precisely the kind of appearance of impropriety §455(a) was intended to prevent. The violation is neither insubstantial nor excusable. Liljeberg, at 867. Petitioner asserts that although Judge Norton claims ignorance by stating that "I was unaware of how [this provision] could be interpreted," (see p.3. **Exhibit "B"**), he certainly should have known of the disqualifying facts;

[ 8 ]

especially, when Judge Norton states that "I try to keep current on **all ethical rules** and take the yearly ethics test..." (see p.3. Exhibit "B") (emphasis added). In fact, his failure to stay informed of this fiduciary interest may well constitute a separate violation of §455. See §455(c). Liljeberg, at 868.

E.   Interplay of §455 and 60(b)(6)

Petitioner asks this Court to construe this 60(b)(6) claim to be predicated upon a violation of 28 U.S.C. §455(a) and (b)(4). "That section [(a)] provides in relevant part: 'any...judge... of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.'" Travelers Ins. Co. v. Liljeberg Enters., Inc., 38 F.3d 1404, 1407-08 (5th Cir. 1994) (Citing 28 U.S.C. §455(a)).

"Although §455 defines the circumstances that mandate disqualification of federal judges, it neither prescribes nor prohibits any particular remedy for a violation of that duty." Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 862 100 L.Ed.2d 855, 108 S.Ct. 2194 (1988).

> Section 455 does not, on its own, authorize the re-opening of closed litigation. However, as respondent and the Court of Appeals recognized, Federal Rule of Civil Procedure 60(b)(6) provides a procedure whereby, in appropriate cases, a party may be relieved of a final judgment."
>                                        Id. at 863
>
> Rule 60(b)(6) relief is accordingly neither categorically available nor categorically unavailable for all §455(a) violations. We conclude that in determining whether a judgment should be vacated for a violation of §455(a), it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in

[ 9 ]

> other cases, and the risk of undermining the
> public's confidence in the judicial process. We
> must continuously bear in mind that to perform
> its high function in the best way 'justice must
> satisfy the appearance of justice.'
> Id. at 864 (quoting In Re Murchison,
> 349 US 133, 136, 99 L.Ed. 942, 75 S.Ct. 623 (1955)
> (internal citations omitted).

Finally, although a delay of several years would normally foreclose relief based on a violation of §455(a), in this case the entire delay is attributable to Judge Norton's inexcusable failure to disqualify himself after he purchased assets at the auction which were directly connected to Petitioner's criminal case; the §455 Motion could have been made less than 10 days after the entry of judgment.

F.  Conclusion

Judge Norton's actions were, in the views of the Fourth Circuit Court of Appeals, and the public, improper, in violation of ethical standards, and questioned by the interested public in the Charleston, SC area. These are not allegations; Petitioner has made a showing that these are indeed facts, and unchallenged facts as well. Petitioner respectfully requests that the relief asked for in Part "A" of this motion be granted, and any other relief this Court deems appropriate.

[ 10 ]

Respectfully submitted this 4th day of December, 2017.

*Albert E Parish*
Albert E. Parish, Pro Se
Reg. No.:12031-171
LSCI - Butner
P.O. Box 999
Butner, NC 27509-0999

## Certificate of Service

I certify that a good and true copy of this instant petitioner was placed in the Institutional Mail System, first-class postage prepaid, pursuant to the "Prison Mailbox Rule" (Houston v. Lack) on the date accompanying my signature below to the following address:

12-4-17                                              *Albert E Parish*
Date                                                 Albert E. Parish

[ 11 ]