IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 2:07-CR-00578-RMG |
| | ) | |
| v. | ) | |
| | ) | |
| ALBERT E. PARISH, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE TO MOTION FOR COMPASSIONATE RELEASE**

The United States respectfully files this response in opposition to the defendant Albert E. Parish's ("Parish" or "defendant") motion for compassionate release in light of the COVID-19 pandemic. The defendant has failed to show an "extraordinary and compelling" reason to justify release. Notwithstanding the legitimacy of the defendant's medical conditions, the mere existence of COVID-19 and the potential it has in defendant's facility do not warrant his release. As such, the government alternatively requests that the Court deny the defendant's motion for a reduction of his sentence on the merits.

**FACTUAL BACKGROUND**

On May 9, 2007, a federal grand jury returned an Indictment charging Parish with violations of Mail Fraud (Counts One through Six), 18 U.S.C. §1341; Wire Fraud (Counts Seven through Ten), 18 U.S.C. §1343; and False Statement (Count Eleven), 18 U.S.C. §1001. Dkt. No. 17. On October 5, 2007, Parish pled guilty to Counts One, Four and Eleven. Dkt. No. 48. Parish was sentenced on June 26, 2008. Dkt. No. 85. At the sentencing hearing, following the presentation of testimony, the district court found the guideline range to be 292 to 365 months. Dkt. No. 65. The Court then sentenced Parish to 292 months imprisonment and ordered him to pay $66,820,167.08 in restitution. Dkt. No. 64.

1

Parish appealed his conviction and sentence. *United States v. Parish*, No. 08-4723, 334 F' Appx. 534 (4th Cir. Apr. 22, 2009). In 2009, the Fourth Circuit found that Parish had no meritorious issues on appeal and affirmed his conviction and sentence. *Id.* at 1. On November 30, 2011, the district court amended its Restitution Order to reflect a restitution amount of $63,026,569.91. Dkt. No. 94. On December 8, 2017 defendant filed a motion under 28 U.S.C. § 2255, which the Court denied on April 16, 2019. Dkt. Nos. 97, 109. Thereafter, the Court denied defendant's motion for reconsideration. Dkt. Nos. 112, 113. Defendant appealed the denial of his § 2255 motion, and the Fourth Circuit denied his appeal on October 22, 2019. Dkt. Nos. 115, 119.

On April 13, 2020, defendant filed his current motion, seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018. Dkt. No. 121. On September 23, 2019, the defendant filed a request for relief with the BOP. *See* Exhibit 1. On September 30, 2019, the warden denied his request for relief, finding "[t]he criteria for Elderly with Medical conditions is age 65 or older and having served at least 50% of your sentence. Currently, you do not meet either of these criteria. You may resubmit you request under this criteria at that time." *See* Exhibit 1. Since receiving the denial, the defendant has not appealed the warden's decision or resubmitted his request.

## **LEGAL AUTHORITY**

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by Section 603(b) of the First Step Act on December 21, 2018, provides in pertinent part:

(c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a

2

> motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)   extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Further, 28 U.S.C. § 994(t) provides: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." Accordingly, the relevant policy statement of the Commission is binding on the Court. *See Dillon v. United States*, 560 U.S. 817, 827 (2010) (where 18 U.S.C. § 3582(c)(2) permits a sentencing reduction based on a retroactive guideline amendment, "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," the Commission's pertinent policy statements are binding on the court).

The Sentencing Guidelines policy statement appears at § 1B1.13, and provides that the Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

Critically, in application note 1 to the policy statement, the Commission identifies the "extraordinary and compelling reasons" that may justify compassionate release. The note provides as follows:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant.—

   (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is—

   (I) suffering from a serious physical or medical condition,
   (II) suffering from a serious functional or cognitive impairment, or
   (III) experiencing deteriorating physical or mental health because of the aging process,

   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

   (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
   (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

For its part, consistent with note 1(D), BOP promulgated Program Statement 5050.50, available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf, amended effective January 17, 2019, to set forth its evaluation criteria.

Program Statement 5050.50 contains standards that are both more extensive than and slightly different from those stated in the Section 1B1.13 policy statement. For instance, the program statement defines a "debilitated medical condition" as one where the inmate is "[c]ompletely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair; or [c]apable of only limited self-care and is confined to a bed or chair more than 50% of waking hours." *Program Statement 5050.50 at 5*.

In general, the defendant has the burden to show circumstances meeting the test for compassionate release. *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019). As the terminology in the statute makes clear, compassionate release is "rare" and "extraordinary." *United States v. Willis*, 2019 WL 2403192, at *3 (D.N.M. June 7, 2019) (citations omitted).

## ARGUMENT

### I. **Parish has failed to assert adequate grounds for compassionate release.**

The First Step Act added a provision to § 3582(c)(1) that allows a defendant to bring a motion for compassionate release directly to a district court after either "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *United States v.*

5

*Hilton*, CR No.1:18-324, 2020 WL 836729, at *2 (M.D.N.C. Feb. 20, 2020). The BOP received the defendant's petition on September 23, 2019. *See* Exhibit 1. Defendant claims that he received no response to his petition, but as seen in Exhibit 1, the warden denied his request. As of the filing of this response, the defendant has not appealed the warden's decision within the BOP. However, because 30 days have passed, even though defendant has not appealed the warden's decision, defendant may move for compassionate release in this court.

Defendant's motion fails because he has not asserted proper grounds for compassionate release – that is, he fails to demonstrate "extraordinary and compelling reasons" to warrant such relief. The Sentencing Commission may recognize two circumstances related to a defendant's medical condition. First, the Commission describes an inmate "suffering from a terminal illness (*i.e*., a serious or advanced illness with an end of life trajectory)." The Sentencing Commission noted that "[e]xamples include metastatic solid—tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." Second, the Commission identifies a circumstance in which "[t]he defendant (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Program Statement 5050.50*. The common denominator is "a serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within a correctional facility."

The defendant has failed to establish that he has a serious physical condition that substantially diminishes his ability to provide self-care within the correctional facility such that there are "extraordinary or compelling reasons" to justify his release. The defendant is currently

housed at FCI Butner, Low Security. The defendant has a medical history of coronary artery disease, atrial fibrillation, diabetes (since 2006), hypertension, obesity, gastroesophageal reflux disease, hypothyroidism, vitamin D deficiency and chronic kidney disease, stage III. *See* Exhibit 2. Defendant uses a walker, but his medical records indicate he was able to move himself within a clinic with no observable problems. *Id.* Parish claims that his age and medical conditions make his likelihood of surviving COVID-19 small, and that COVID-19 threatens his life. Further, defendant argues that FCI Butner is highest in the nation, amongst BOP institutions for COVID-19 cases.

In the context of the COVID-19 outbreak, courts have declined to find extraordinary and compelling reasons for compassionate release when an inmate has failed to show both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility. *See United States v. Feiling*, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (holding that the defendant failed to present extraordinary and compelling reasons for compassionate release given that "the BOP has yet to confirm a case of COVID-19 at [Defendant's BOP facility], so Defendant's request relies on the mere possibility that COVID-19 will spread to his facility"); *United States v. Dungee*, 2020 WL 1666470, at *2 (W.D. Va. Apr. 4, 2020) (denying motion for compassionate release, because the defendant failed to show that his "individual conditions of confinement — as opposed to those conditions that the inmates generally are subject to — are such as to justify relief"); *United States v. Edwards*, 2020 WL 1650406, at *5 (W.D. Va. Apr. 2, 2020) (finding that immunocompromised inmate with brain cancer housed at a facility with confirmed COVID-19 cases had shown compelling reasons for release); *United States v. Gileno*, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) (declining to grant home confinement and stating that "[w]ith regard to the COVID-19 pandemic, [the defendant] has also not shown that the

plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within [the defendant's] correctional facility, or that the facility is specifically unable to adequately treat [the defendant]"). Notably, "the *fear* of contracting a communicable disease" proves insufficient to justify a sentence modification. *United States v. Clark*, 2020 WL 1557397, at *4 (M.D. La. Apr. 1, 2020) (emphasis added). In fact, the vast majority of courts analyzing similar motions have denied them. *See, e.g.*, *Clark*, 2020 WL 1557397, at *4–5 (noting that "there is no evidence before the Court that the BOP's plan to address the pandemic will not adequately protect inmates"); *Carter v. Santa Fe Adult Detention Center*, 2020 WL 1550888, at *2 (D.N.M. Apr. 1, 2020) ("[The defendant] makes generalized, speculative allegations concerning fear of contracting the COVID-19 coronavirus. He does not, however, present any factual allegations of exceptional or extraordinary personal circumstances that render him personally at high risk of contracting the disease.").

Notwithstanding the legitimacy of the defendant's medical issues, he fails to assert that his conditions leave him disabled or unable to provide self-care. Although the defendant lists multiple medical conditions that may expose him to a particularized susceptibility to COVID-19, he fails to demonstrate a particularized risk of contracting the disease. As of April 23, 2020, FCI Butner is eighth on the BOP list for FCI's with the highest number of COVID-19 cases. However, the list distinguishes between Butner Medium I FCI, which is eighth, and Butner Low FCI, where defendant is located. Butner Low has seven reported cases and is fifteenth on the list.[1] Moreover, the BOP has established an extensive COVID-19 operations plans.[2] All visitation is currently suspended at BOP facilities. Inmate movement has been suspended, with limited exceptions. The

---

[1] *See* https://www.bop.gov/coronavirus/.
[2] BOP protocols are often updated and can be accessed at https://www.bop.gov/coronavirus/covid19_status.jsp.

BOP has instituted screening measures for all inmates and staff, and both symptomatic and asymptomatic inmates with exposure risk factors are quarantined and/or isolated and tested for COVID-19. The BOP has instituted certain measures to ensure social distancing within its facilities, including staggered meal times and staggered recreation times to limit congregate gatherings. As fully outlined, "the BOP's COVID-19 response plan reveals a comprehensive, evolving and professional effort to curtail the virus and protect both inmates and staff." *United States v. Feiling*, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020). As the Third Circuit recently recognized, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, ___ F.3d ___, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020). The Third Circuit added that the "BOP's shared desire for a safe and healthy prison environment" and "the Attorney General's directive that [the] BOP 'prioritize the use of [its] various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic'" only highlighted the BOP's seriousness in handling the present crisis. *Id.* (*quoting* Mem. from Att'y Gen. to Dir., BOP 1 (Mar. 26, 2020), https://www.justice.gov/file/1262731/ download).

Unlike defendants who have received the requested relief during the COVID-19 pandemic, the defendant is not projected to be released until 2029, and his full term expires in 2032. Based on this, defendant is about half way through his 292 month sentence. Further, he has not demonstrated that his health issues warrant release. *Compare United States v. Campagna*, 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) (granting request of defendant with two months remaining on sentence, finding that "Defendant's compromised immune system, taken in concert

9

with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason to modify to Defendant's sentence"); *United States v. Jepsen*, 2020 WL 1640232, at *5 (D. Conn. Apr. 1, 2020) ("Mr. Jepsen is in the unique position of having less than eight weeks left to serve on his sentence, he is immunocompromised and suffers from multiple chronic conditions that are in flux and predispose him to potentially lethal complications if he contracts COVID-19, and the Government consents to his release."); *United States v. Colvin*, 2020 WL 1613943, at *4 (D. Conn. Apr. 2, 2020) (defendant had diabetes and high blood pressure, while eleven days remained on her sentence).

Moreover, the Court must "consider[ ] the [sentencing] factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Because section 3553(a) establishes factors to consider in initially imposing a sentence, not every factor applies here. The applicable factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>     ... [and]
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

18 U.S.C. § 3553(a). The statute also mandates: "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)." *Id.*

As the Court extensively outlined during the June 26, 2008 sentencing, and in a July 9, 2008 memorandum, the applicable sentencing factors set forth in § 3553(a) do not warrant a further sentence reduction. Dkt. Nos. 68, 81. The district court found that defendant's crimes were

10

serious, that he orchestrated a fraudulent investment scheme whereby "he knowingly misappropriated funds from his friends, his family, his coworkers, the elderly, and those who relied on their investments to care for themselves or ill relatives." Dkt. No. 68, p. 3-4. The Court found that he used his stature in the community to build trust and used investors' funds to further inspire that trust. *Id*. at 4. The Court also found that defendant's personal characteristics, including his health, supported the sentence. Specifically, he was well-educated and he did not commit a crime of necessity. The Court found that his health issues did not require a below-Guidelines sentence "because they are not so serious that the Bureau of Prisons will be unable to address his problems and imprisonment will not unnecessarily aggravate them." *Id*. at 5. The court specifically found in a footnote that defendant's health did not constitute "special circumstances." *Id*. at fn. 4.

The Court also found that the imposed sentence reflected the seriousness of defendant's offenses. The Court felt it appropriate that defendant not have a chance to rebuild his career or regain his status in the community, which defendant now seeks an opportunity to do. *Id.* at 6. The Court found that the sentence provided general deterrence and that it would protect the public from him. *Id*. at 7-8. Similarly, the Courtt analyzed each of the factors under 18 U.S.C. § 3553 and tailored the sentence to account for these factors, including restitution in the amount of $66,820,167.08. *Id.* at 12.

Notably, the defendant has failed to establish how release from the BOP lessens the risks associated with contracting COVID-19. Should he be released, the defendant will continue to face the health risks associated with COVID-19 without the protections currently in place at Butner. Release and a return to society means leaving a facility with measures to deal with COVID-19 in place to the general public, which does not guarantee such protections. In sum, the defendant has failed to demonstrate extraordinary and compelling reasons to warrant compassionate release.

11

## **CONCLUSION**

As fully set forth above, defendant has failed to demonstrate an extraordinary and compelling reason that exposes him to both a particular susceptibility to COVID-19 and a particularized risk of contracting the disease while housed at his current facility. Therefore, the government requests that the Court deny his motion for compassionate release.

                                            Respectfully submitted,

                                            PETER M. MCCOY, JR.
                                            UNITED STATES ATTORNEY

                                  By:  s/Nathan Williams
                                            Nathan Williams (ID # 10400)
                                            Assistant United States Attorney
                                            151 Meeting Street, Suite 200
                                            Charleston, SC 29401
                                            Tel. (843) 266-1661
April 24, 2020                              nathan.williams@usdoj.gov